**ADAMS et, Plaintiffs-Appellees, v. MORRISON et, Defendants-Appeliants.**

Ohio Appeals, First District, Hamilton County.

No. 7351. Decided February 19, 1951.

Simon Leis, E. G. Schuessler, Cincinnati, for plaintiffs-appellees.

Henry M. Bruestle, Ed. F. Alexander, Cincinnati, for defendants-appellants.

## OPINION

By THE COURT:

The relief sought in this action is an injunction restraining the members of the Civil Service Commission of the City of Cincinnati from allowing any one other than the plaintiffs to compete in a promotional examination for the grade or rank of Police Chief of the police force of the City of Cincinnati. From a judgment granting the relief sought, the defendant appeals on law and fact.

At the trial de novo in this court the cause was submitted upon a transcript of the testimony introduced in the Common Pleas Court, a stipulation of counsel, and copies of certain ordinances. The defendants also offered in evidence a copy of an ordinance and a copy of an amendment of the charter of the City of Cincinnati adopted during the pendency of this action to which the plaintiffs objected. The court reserved its ruling upon this objection until such time as it could be considered in the light thrown upon it by the briefs of counsel.

The plaintiff, William C. Adams is assistant Police Chief ranking immediately below the Police Chief and is the only member of the police force of that rank. The exact status or rank of the plaintiff Clem Merz is the disputed point in this case. The plaintiffs contend that his rank is that of Superintendent of Crime Bureau, and that this places him in rank immediately below the Assistant Police Chief and that as he is the only member of that rank in the police department, the plaintiffs contend that they and they alone, are the only members eligible to take the promotional examination to fill the position of Police Chief.

On the other hand, the defendants contend that the rank or grade of the plaintiff Merz is that of major, next in rank to that of Assistant Police Chief, and, as such, eligible to take the promotional examination for the position of Police Chief, but that as there are several other members of the police force of equal rank, they are all eligible to take the examination. In effect, the injunction granted excludes these other majors from entering the contest for promotion to Police Chief.

As disclosed by the testimony and ordinance in this case, as we enter the period material here, members of the police

department of the grade or rank of captain were eligible to take an examination for promotion to the rank of Police Chief. All captains were of the same rank or grade and all were equally eligible. Sometime in the late 1920s or early 1930s a rank or grade styled "Major" was created, but whether the authority was different or higher at any time than that of captain is not clear and is unimportant, as many years ago the position or grade was consolidated with that of captain, the only vestige remaining being the honorary title of major applied to those captains who had been majors.

In the course of time these captains or majors were assigned specific duties by their superior officer, and these assignments acquired a certain permanency. They in time came to be designated by names indicating the nature of the duties, such as superintendent of crime bureau, superintendent of highway safety, etc., and for one reason or another the thought developed that a captain or major assigned to perform certain services should receive additional compensation. Finally, in recognition of an existing condition in the department, the city council, by ordinance, established six positions with salaries somewhat greater than the base salary of a captain. However, the City council was careful to expressly provide that the occupants of these positions should have the grade or rank of captain or major. In one instance only was this omitted, and that was in the codification and as soon as the omission was discovered, the city council, by ordinance restored the designation.

So we are of opinion that so far as the City of Cincinnati had the power, it exercised that power to place all captains or majors in the same grade or rank, and if the grade or rank established by the City of Cincinnati at the time this vacancy occurred is given effect, they are all equally eligible to contest at the promotional examination for Police Chief and this condition continued to the time this action was filed.

It has not been suggested that the captains or majors occupying these other positions within that rank or grade are any less qualified by their experience to discharge the duties of Police Chief than the Superintendent of the crime bureau. It is not claimed that placing all captains or majors on an equality of eligibility for promotion to the position of Police Chief would be arbitrary and a disregard of essential differences. Nor is it contended that the Civil Service Commission acted arbitrarily in ruling that all captains or majors were eligible to take the examination for promotion to Police Chief.

After the Common Pleas Court had entered its judgment in this case, the Council of the city of Cincinnati passed an

ordinance to "clarify the procedure governing rank and promotions in the police force," in which it was expressly ordained that "Within the ranks below that of assistant chief, the council shall establish such special positions having special duties, with preferential pay as the Council deems necessary; but the existence of such special positions shall not establish eligibility for promotion to the next higher rank. No special position established by Council within the ranks below that of assistant chief shall be filled without promotional examination."

At the same meeting of the Council, it passed an ordinance to submit to the electors at the election to be held on November 7th, 1950, an amendment to the City Charter identical in terms with that of the ordinance. Said amendment was approved by a majority of the voters at that election.

We do not stop to consider what effect, if any, this later ordinance could be given as an independent legislative act in its application to a vacancy occurring prior to its enactment. In any event, we think it is competent to remove any doubt or uncertainty in the then existing ordinances. (50 Am. Jur., 326.) We do say, however, that no public employee—civil service or otherwise—has any vested right in the position he occupies, and by the same token no civil service employee has a vested right in a promotion status. Civil service employees are protected in their position and status against arbitrary interference—and that is all. No one has a vested right in a law.

The controversy, long continued as to the division of power between the State government and municipal governments, effected by Article XVIII of the Constitution, need not be reviewed here, although defendants' counsel calls attention to a recent decision of the Supreme Court, in which no opinion was handed down which they assert is inconsistent with prior pronouncements of that court. The appeal as of right was dismissed, because no debatable constitutional question was presented. The record shows that there were other than constitutional questions involved, in that case, and as constitutional questions are not decided unless necessary, we think we may presume that this appeal was dismissed because the Supreme Court found that the judgment could be supported without deciding the constitutional issue.

The Supreme Court in **Cincinnati v. Gamble, 138 Oh St, 220,** held that "Matters relating to police and fire protection are of state-wide concern and under the control of state sovereignty" and therefore a municipal pension system could not be made to apply to the police and fire departments, contrary to general laws of the state. The court held that the

home-rule provision of Article XVIII did not confer superior authority in such matters upon municipalities that had adopted home-rule charters. This was emphasized in **State, ex rel. Arey v. Sherrill, 142 Oh St, 575,** both of which cases involved the power of the City of Cincinnati over its police and fire departments, just as the case at bar does. A change of attitude as shown by these cases should be evidenced by more than an implication, from the lurking presence of the question in a later record. Defendants' counsel do not ask us to conclude otherwise.

But both of these cases (Cincinnati v. Gamble and State ex rel. Sherrill, supra) involved conflicting actions by the state and municipality. They assumed that in the absence of conflicting state legislation, the municipality could legislate on the subject. It is expressly so stated in State, ex rel. Arey v. Sherill, supra, at 582 and 583: "It is claimed by virtue of these provisions of the charter and the administrative code the respondent is granted power and authority to hear and determine the charges against relator."

"This claim must be sustained unless applying those provisions of the city charter and the administrative code to cases involving members of the police department creates conflict with general laws."

Plaintiffs' counsel do not contend that the State has enacted any law for the establishment of police departments by municipal corporations with provisions fixing duties, authority, salaries, order of precedence, etc. The only general law on that subject to which our attention has been called is §4374 GC, which provides that the police department of each city shall be composed of a chief of police "and such inspectors, captains, lieutenants, sergeants, corporals, detectives, patrolmen"—"*as are provided by ordinance or resolution of council.*" This statute not only does not limit municipal action, it expressly authorizes such action. Its only requirement is that there must be a Chief of Police.

But plaintiffs' counsel so construe §486-15a GC, that it would operate as a limitation upon the power of the municipality to fix the order of precedence for promotion, and put it in conflict with the attempt of the defendants to treat all captains or majors as eligible to take the promotional examination for the position of Police Chief. Let us consider that section. We quote it in full:

"No position above the grade or rank of patrolman or regular fireman in the police or fire department shall be filled by original appointment. Vacancies in position above the rank or grade of patrolman or regular fireman in a police or fire

department shall be filled by promotion from among persons holding positions in a grade or rank lower than the position to be filled. Appointments to such vacancies shall be limited to members of the respective departments. No position above the grade or rank of patrolman or regular fireman in a police or fire department shall be filled by any person unless he shall have first passed a competitive promotional examination. Promotion shall be by successive grades or ranks so far as practicable and no person in a police or fire department shall be promoted to a position in a higher grade or rank who has not served at least twelve months in the lower grade or rank. No competitive promotional examination shall be held unless there are at least two persons eligible to compete. Whenever a municipal civil service commission determines that there are less than two persons holding positions in the grade or rank next lower than the position to be filled and who are eligible and willing to compete, such commission shall allow the persons holding positions in the next lower grade or rank, and who are eligible, to compete with the person or persons holding positions in the grade or rank lower than the position to be filled. For the purpose of this section, an increase in the salary or other compensation of any one holding a position in a police or fire department, beyond that fixed for the grade or rank in which such position is classified, shall be deemed a promotion. Whenever a vacancy occurs in a position above the grade or rank of patrolman or fireman in a police or fire department, and there be no eligible list for such grade or rank, the municipal civil service commission shall, within sixty days of such vacancy, hold a competitive promotional examination. After such examination has been held and an eligible list established the civil service commission shall forthwith certify to the appointing officer the name of the person receiving the highest rating. Upon such certification, the appointing officer shall appoint the person so certified, within thirty days from the date of such certification. If there is a list, the civil service commission shall, where there is a vacancy, immediately certify the name of the person having the highest rating and the appointing authority shall appoint such person within thirty days from the date of such certification."

This section is a part of Chapter A of Division II of the General Code, by which the civil service of the state and its political subdivisions is governed. By its terms, it provides for municipal civil service commissions to execute its provisions. The defendants are the members of the civil service commission of the City of Cincinnati. In the discharge of

their duty, they have ruled that all captains and majors are of the same grade or rank for the purpose of eligibility to take the promotional examination to fill the vacancy in the position of Chief of Police, and that ruling was based on the classification established by the municipal Council. Of course, if that classification and ruling are purely arbitrary, they cannot stand. If it had been shown that officials having entirely dissimilar duties to perform had been thrown into one class or grade arbitrarily, a different question would be presented. If it had been shown that the experience as superintendent of the crime bureau was entirely different from that of other captains or majors, and that such experience was clearly such as to give him greater qualifications for the position of police chief, it might be said that placing him in the same class with captains or majors generally would be arbitrary action by the City Council and Civil Service Commission, and that under such circumstances a court would be justified in enjoining such arbitrary action. No such showing has been made or attempted in this case.

Plaintiffs' counsel rely solely on the terms of §486-15a GC, for their position that the superintendent of the crime bureau cannot be placed in the same grade or rank as captains or majors generally, and that it makes void the attempt of the City Council and the Civil Service Commission to so do.

We have been unable to find anything in §486-15a GC, defining the meaning of the phrase "grade or rank." It assumes that there are grades or ranks, but it prescribes no standard by which to determine which is higher and which is lower. Counsel point to that portion of §486-15a GC, providing that "For the purpose of this section, an increase in the salary or other compensation of anyone holding a position in a police or fire department, beyond that fixed for the grade or rank in which such position is classified shall be deemed a promotion." The case at bar does not involve a situation resulting from an increase of salary. We fail to see the relevancy of that portion of the section to the issue in this case. The range of the salary of captains or majors was between the minimum of $3240.00 to $4200.00. To say that the latter is the salary of the superintendent of the crime bureau and not that of a captain or major, is to disregard his classification as a captain or major. From the context of this section, it seems clear to us that the legislature was considering and determining what positions should be filled by promotional examinations only. It was not legislating as to eligibility to take the promotional examination at that point. At no place in this section, or any other section, so

far as we have discovered, has the legislature prescribed any order of promotion. The most that it has done has been to say that there should be an order of promotion according to grades or ranks. It has not defined the terms or fixed a standard which a court can apply. It has left that to the sound discretion of the administrative department of the government—State or Municipal.

We have been cited to no case, and have found none, setting forth indicia by which to determine gradations of rank. That results, we presume, from the fact the agency having the authority to create the positions has the authority to prescribe the order of their importance. The intent of the creator of the positions as to their grades might be left to inference or, as we think as appears in this case could be expressly stated.

In **State, ex rel. v. Cull, et al., Civil Service Commission, 140 Oh St, 207,** the relator sought a writ requiring the respondents to "certify, appoint, and classify him as a permanent incumbent in the rank of engineer." He had been a regular fireman and was promoted to a permanent position in the rank of marine engineer. He held this rank for several years, when he was notified that the City was discontinuing the use of fire boats and that as of that date he was appointed temporarily to the lower rank of engineer. The action was to require his recognition as a permanent engineer. So it is obvious that the case involved a question of demotion—not promotion, and the rank or grade after demotion. The Court held he was entitled to the relief sought. At page 209 the Court said:

"The respondents contend that there is no difference in 'rank' between an engineer and a marine engineer. If left to inference, a difference in salary might not connote a difference in rank. However, the intention of the General Assembly in this respect is manifested by cognate §486-15a GC, which provides that for 'the purpose of this section, an increase in the salary or other compensation of anyone holding a position in a police or fire department, beyond that fixed for the grade or rank in which such position is classified, shall be deemed a promotion.' "

We cite this case for three reasons:—(1) That a difference in salary does not necessarily connote a difference in rank, in the absence of a statute to the contrary; and, (2) That the case did not involve any issue of eligibility to enter a promotional examination; and, (3) That it does appear from the record that engineers and marine engineers had been placed by ordinance in distinct grades or ranks.

We conclude that the plaintiffs have failed to establish their right to an injunction, and that their petition should be dismissed. It is so ordered.

HILDEBRANT, PJ, MATTHEWS & ROSS, JJ, concur.